UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHANIE BEAULEAU,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

______________________________/

Case No.: 1:25-cv-659

Hon. Jane M. Beckering

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claims for supplement security income (SSI).

Plaintiff filed an application for SSI on September 19, 2022, alleging disability beginning on March 1, 2022. (ECF No. 6-2, PageID.37). Plaintiff lists a number of disabling conditions: diabetes type 2; high blood pressure; coronary disease; peripheral artery disease; 2 heart stents; major depressive disorder; anxiety; borderline personality disorder; and post-traumatic stress disorder (PTSD). (ECF No. 6-7, PageID.259). Prior to filing for disability, plaintiff completed the 12th grade and has past relevant work as a Truck Driver. (ECF No. 6-2, PageID.49; ECF No. 6-7, PageID.260). An ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on June 10, 2024. (ECF No. 6-2, PageID.37–51). That decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date of September 19, 2022. (ECF No. 6-2, PageID.40). At the second step the ALJ found that plaintiff had severe impairments of: degenerative joint disease/osteoarthritis of the bilateral knees; status-post bilateral total knee arthroplasties; degenerative disc disease; obesity; status-post cerebellar stroke; diabetes mellitus; coronary artery disease; hypertension; bradycardia; plantar fasciitis; major depressive disorder; borderline personality disorder; post-traumatic stress disorder; and generalized anxiety disorder. (*Id.*) At the third step, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C. F. R. Pt. 404, Subpt. P, App. 1. (*Id.*)

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she needs to be able to use a cane when walking. The claimant cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. The claimant can never balance on narrow, slippery, or erratically moving surfaces. The claimant can occasionally stoop, kneel, crouch, and crawl. She can have no exposure to vibration, such as vibratory tools or machinery. The claimant can have no exposure to hazards, such as unprotected heights or dangerous, moving machinery. She can understand, carry out, and remember simple instructions. The claimant is limited to simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e. no work on an assembly line). She is limited to low stress work, which is defined as involving only simple, work-related decisions and routine workplace changes. The claimant is limited to occasional interaction with co-workers and supervisors and is limited to no transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution of disputes. The work itself should deal with things rather than people throughout a typical workday, and there should be no tandem tasks or teamwork required.

(*Id*., PageID.43-44). The ALJ also found that the plaintiff is unable to perform any past relevant work. (*Id*., PageID.49). At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the light exertional level. (PageID.50). Specifically, the ALJ found that the plaintiff could perform the requirements of occupations in the national economy such as a Mail Sorter (80,000 jobs), Office Helper (75,000 jobs), and a Garment Sorter (50,000 jobs). *Id.* Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from September 19, 2022 (the date she filed the application) through June 27, 2024 (the date of the decision). (*Id*., PageID.50-51).

## III. DISCUSSION

Plaintiff contends that the ALJ committed two errors that warrant reversal. First, Plaintiff argues that the ALJ failed to develop the record regarding plaintiff's mental impairments and as a result, erroneously crafted an RFC that was not informed by medical opinion evidence. Second, Plaintiff claims that the ALJ's decision is not supported by substantial evidence because his RFC determination was based on an outdated source opinion, that the ALJ did not include a critical body of objective medical evidence when making the RFC determination, and the medical evidence in its entirety showed sufficient impairment that it was beyond the ALJ's ability to render a commonsense judgment about functional capacity.

### A. Failure to Develop the Record

The ALJ is responsible for "ensuring that every claimant receives a full and fair hearing[.]" *Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). Yet, "[p]romoting the claimant's case . . . is not the ALJ's obligation," because the ALJ is "a neutral factfinder, not an advocate." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022) (citing *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (plurality opinion)). As noted above, Plaintiff

bears the burden of proving the existence and severity of limitations caused by her impairments. *See* § I, *infra*. Moreover, it is Plaintiff's responsibility to provide an adequate record on which the ALJ can make an informed decision regarding the claimant's disability status. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)).

Plaintiff argues that the ALJ had a duty to further develop the record here on the strength of the following authorities: the Sixth Circuit Court of Appeals decision in *Lashley*, the Northern District of Ohio's decision in *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908 (N.D.Ohio, 2008), and the Western District of Kentucky's decision in *Sefo v. Comm'r of Soc. Sec.*, No. 3:20-CV-00534-CHL, 2022 WL 969622 (W.D.Ky. Mar. 30, 2022).

In *Lashley*, the Sixth Circuit panel determined there are circumstances where the ALJ's obligation to afford "a full and fair hearing" might "rise[] to a special duty" to "develop a full and fair record." *Lashley*, 708 F.2d 1048, 1051. The special circumstances in that case included the fact that the "the claimant appeared before the administrative law judge without counsel," the "hearing was brief," and the claimant "possessed limited intelligence, was inarticulate, and appeared to be easily confused." *Id.* at 1052. The Sixth Circuit has since suggested that *Lashley* is "best viewed as an extreme example." *Moats*, 42 F.4th at 564. Indeed, the *Moats* panel noted that no "other published case from our Court . . . has imposed *Lashley*'s 'special duty' on Social Security ALJs." *Id.* at 563.

Plaintiff was represented by counsel before the ALJ. (ECF No. 6-2, PageID.37 ("The claimant's main representative is Andrew Kirkendall, an attorney. Bobby Ficklin, Jr., also an attorney, appeared at the hearing.").) Thus, *Lashley*'s extreme example does not apply here.

The *Deskin* decision is also an outlier. *Deskin* announced the following rule:

> [W]here the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases where the medical evidence shows "relatively little physical impairment" and an ALJ "can render a commonsense judgment about functional capacity."

*Deskin*, 605 F.Supp.2d at 912 (footnote omitted). Courts have repeatedly declined to follow the *Deskin* rule. For example, recently in *Brown v. Comm'r of Soc. Sec.*, No. 1:25-cv-01330, 2026 WL 2241199 (N.D.Ohio Aug. 4, 2026), the court explained:

> Importantly, *Deskin* is not binding authority and judges in this district have both criticized and declined to follow that line of decisions. *See, e.g., Carr v. Comm'r of Soc. Sec.*, No. 5:23-CV-00187, 2024 WL 1343473, at *5 (N.D. Ohio Mar. 30, 2024) (collecting cases). In *Winans v. Comm'r of Soc. Sec.*, for example, the court found an "ALJ did not need to request a consultative examination to make the disability decision," despite the lack of medical opinion evidence, because the record contained "substantial evidence supporting the ALJ's finding that [the plaintiff] was not disabled." No. 5:22-cv-01793, 2023 WL 7622634, *4 (N.D. Ohio Nov. 15, 2023). The court described *Deskin* as "a non-binding district court decision that conflicts with the regulations and Sixth Circuit case law" and ultimately "places a higher burden on the ALJ than the Sixth Circuit does." *Id*. Similarly, in *Fox v. Comm'r of Soc. Sec.*, the court acknowledged the body of cases applying the "*Deskin* rule," but observed that "Deskin isn't controlling, and it has received mixed reviews" before concluding:
>
>> The bottom line is that various courts apply various standards from largely unpublished district court opinions. I return to the language of the regulations and Sixth Circuit authority, which make clear that the burden to prove her case rests on the claimant, not the ALJ.
>
> No. 5:23-CV-580, 2023 WL 7018362, at *8-9 (N.D. Ohio Oct. 10, 2023) (citing *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022) and 20 C.F.R. § 404.1512(a)), *report and recommendation adopted*, 2023 WL 7222824 (N.D. Ohio Nov. 2, 2023). The undersigned agrees with the above criticisms of the "*Deskin* rule," and concludes instead that the Court's decision in this case should be governed by the regulations and Sixth Circuit authority.
>
> The Sixth Circuit has explained that "[t]he responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). In keeping with that

> responsibility, the Sixth Circuit does not require an ALJ to "get the opinion of another physician before setting the [RFC]." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018). Indeed, the court has "rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *Id.* at 401–02 (citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017) and *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013)).

*Brown*, 2026 WL at *9–10, *R&R adopted,* 2026 WL 2431924 (Aug. 19, 2026). Judges in this Court have reached the same conclusion. *Graviett v. Comm'r of Soc. Sec.*, No. 1:25-cv-1052, 2026 WL 2342595 (W.D.Mich. Aug. 13, 2026); *Clinton L.,Sr. v. Comm'r of Soc. Sec.*, No. 1:24-cv-654, 2025 WL 854331 (W.D.Mich. Mar. 19, 2025); *Peterson v. Comm'r of Soc. Sec.*, No. 1:16-cv-363, 2017 WL 343625 (W.D.Mich. Jan. 24, 2017); *Phillips v. Comm'r of Soc. Sec.*, No. 1:16-cv-147, 2016 WL 6802892 (W.D.Mich. Nov. 17, 2016); *Meyers v. Comm'r of Soc. Sec.*, No. 1:15-cv-0984, 2016 WL 4974975 (W.D.Mich. Sept. 19, 2016). Thus, the undersigned rejects Plaintiff's *Deskin* challenge.[1]

Setting aside concerns regarding the authorities on which Plaintiff relies, the crux of Plaintiff's argument is that the ALJ's decision regarding Plaintiff's RFC based upon her mental impairments is not supported by substantial evidence. RFC is a medical assessment of what an individual can do in a work setting despite functional limitations and environmental restrictions imposed by all of the individual's medically determinable impairments. 20 C.F.R. § 404.1545. It is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(C).

[1] Rejecting Plaintiff's *Deskin* challenge necessarily compels rejection of Plaintiff's *Sefo* argument. In *Sefo*, Magistrate Judge Colin H. Lindsay of the United States District Court for the Western District of Kentucky relied on *Deskin* to reject the ALJ's RFC determination where "the ALJ relied solely on her own lay interpretation of raw medical data in reaching her conclusion." *Sefo*, 2022 WL 969622, at *4. The undersigned concludes that, for the same reason the Plaintiff's *Deskin* challenge lacks merit, Plaintiff's *Sefo* argument lacks merit as well.

Here, the ALJ determined that Plaintiff suffered from major depressive disorder, borderline personality disorder, post-traumatic stress disorder, and generalized anxiety disorder. (ECF No. 6-2, PageID.40.) With regard to the limiting impact of these disorders, the ALJ stated:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, 12.08, and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering, or applying information, the claimant has a moderate limitation. She reported she did not do well following spoken instructions and did "somewhat ok" following written instructions (C6E/6). At the hearing, she alleged problems with memory. However, mental status examination revealed normal memory (C3F/150). In addition, she exhibited normal cognition (C3F/187). Moreover, she generally displayed unimpaired judgment (C2F/562, 606, 668; C3F/187; C4F/595; C9F/32; C12F/40). Therefore, the undersigned finds the claimant has no more than a moderate limitation in understanding, remembering, or applying information.
>
> In interacting with others, the claimant has a moderate limitation. At the hearing, the claimant testified that she does not like being in crowds. Nonetheless, she stated that she respected authority figures and had never been fired or laid off due to an inability to get along with others (C6E/6). She indicated she could shop in stores (C3E/4; C6E/4). The claimant noted that she socialized with others three times a week (C3E/5). During treatment, she was described as cooperative (C3F/187; C4F/699; C9F/22; C13F/19). Based on the totality of the evidence, the undersigned finds the claimant has a moderate limitation in interacting with others.
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant indicated that she could pay attention for only 20 minutes and did not finish what she started (C6E/6). As mentioned above, her cognition was normal (C3F/187). The record includes several references to normal thought content (C2F/562, 606, 668; C3F/187; C7F/262; C9F/32). Additionally, at the hearing, the claimant testified that her energy level was "medium". For these reasons, the undersigned concludes the claimant has no more than a moderate limitation in concentrating, persisting, or maintaining pace.
>
> As for adapting or managing oneself, the claimant has experienced a moderate limitation. She alleged she did not do well handling stress or changes in routine (C6E/7). However, her treatment notes generally showed that she did not present

> in acute distress (C2F/561, 604; C3F/32, 185; C4F/596, 699; C9F/15, 31, 81; C10F/115; C11F/13). In addition, she generally displayed unimpaired judgment (C2F/562, 606, 668; C3F/187; C4F/595; C9F/32; C12F/40). Moreover, there were several references to normal thought content (C2F/562, 606, 668; C3F/187; C7F/262; C9F/32). She did not allege that her mental impairments affected her ability to tend to her personal care (C3E/2; C6E/2). The claimant indicated that she did not need reminders to tend to her personal care or take her medication (C3E/3). Accordingly, the undersigned finds the claimant has a moderate limitation in adapting or managing oneself.
>
> * * *
>
> Although the claimant's mental impairments meet the duration requirement, the record does not show that despite treatment she is unable to function outside of her home or in a more restrictive setting without substantial psychological support.

(*Id.*, PageID.42–43.) When considering Plaintiff's residual functional capacity, the ALJ noted:

> The claimant has been diagnosed with major depressive disorder, borderline personality disorder, PTSD, and generalized anxiety disorder, but these impairments do not cause disabling limitations (C3F/43-46). In September 2022, the claimant displayed normal mood, behavior, thought content, and judgment (C2F/562). In February 2023, she showed appropriate mood and affect, and her memory was intact (C3F/150). In addition, she followed verbal commands well (C3F/150). The following month, she reported mood stabilization since moving in with her father and sister in September 2022 (C3F/184). Her mental status examination was unremarkable (C3F/187). Subsequent treatment notes indicated that she was cooperative with normal mood and affect (C4F/700). In July 2023, the claimant had normal mood and affect (C9F/16).
>
> The claimant's statements about the intensity, persistence, and limiting effects of her symptoms, are not entirely consistent with the record evidence.
>
> * * *
>
> Although the claimant has been diagnosed with mental impairments, the evidence does not suggest she engaged in mental health counseling. As mentioned above, she testified that she had not taken any medication for her mental impairments since approximately December 2022. Therefore, the undersigned finds the claimant's impairments are not as limiting as alleged.
>
> * * *
>
> Due to the combination of her mental impairments, she has a moderate limitation in understanding, remembering, or applying information. Accordingly, she can understand, carry out, and remember simple instructions. Because her mental impairments also cause a moderate limitation in concentrating, persisting, or maintaining pace, the claimant is limited to simple and routine tasks performed in

> a work environment free of fast-paced production requirements (i.e. no work on an assembly line). The claimant's mental impairments result in a moderate limitation in adapting or managing oneself. As such, she is limited to low stress work, which is defined as involving only simple, work-related decisions and routine workplace changes. The claimant also has a moderate limitation in interacting with others secondary to her mental impairments. Therefore, she is limited to only occasional interaction with co-workers and supervisors; is limited to no transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution of disputes; the work itself should deal with things rather than people throughout a typical workday; and there should be no tandem tasks or teamwork required.

(*Id.*, PageID.47–48.)

The undersigned has reviewed the entire record. It does not appear that the ALJ failed to consider the mental health evidence that was provided. Plaintiff fails to identify how the ALJ failed to take into account the mental health evidence that appeared in the record. The only shortcoming Plaintiff has claimed is the ALJ's failure to obtain *more evidence* regarding Plaintiff's mental health and resulting limitations. But Plaintiff has failed to demonstrate that it was the ALJ's obligation to do so and has further failed to show a lack of substantial evidence to support the ALJ's findings.

The ALJ carefully considered the evidence related to Plaintiff's mental impairments. Plaintiff has not claimed, much less shown, that the restrictions the ALJ included in the RFC determination failed to adequately take into account Plaintiff's functional limitations stemming from the impairments.

It is the ALJ who has the ultimate responsibility for assessing a plaintiff's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1545(a); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [their] residual functional capacity.") The undersigned concludes the ALJ acted squarely within his authority in determining Plaintiff's RFC.

**B. Failure to Obtain Expert Medical Translation of Raw Medical Data**

Plaintiff next contends that hundreds of pages of medical records were submitted after Dr. Lisa Hughes DO had completed her September 18, 2023, report regarding Plaintiff's physical residual functional capacity. (ECF No. 15, PageID.4591). Plaintiff claims that, because the medical information in those records offered only "raw medical data . . . that had not been "translated by a medical expert," the ALJ impermissibly "'played doctor' by making his own interpretations regarding said data and what limitations, if any, they would have on Plaintiff's functional limitations." (Reply Br., ECF No. 20, PageID.4611–4612).

An ALJ might be "playing doctor" when the ALJ substitutes his or her own opinion for the differing opinion of a doctor, but that is not what happened here. As the Sixth Circuit explained in *Poe*:

> The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician. See 20 C.F.R. §§ 404.1546(c), 416.946(c). Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Moreover, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding. *See Ford v. Comm'r of Soc. Sec.*, 114 F. App'x. 194, 197 (6th Cir.2004).

*Poe*, 342 F. App'x at 157. That is what the ALJ did here. Plaintiff's suggestion that the ALJ was not permitted to assess residual functional capacity based on medical information—raw data or otherwise—without the information being first translated by a medical expert first, is simply a hollow echo of the previously rejected argument regarding *Lashley*, *Deskin*, and *Sefo*.

## IV. RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.

Dated: October 16, 2026

/s/ Ray Kent
RAY KENT
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).